UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CHARLES COLEMAN,                    :

        Plaintiff,                  :

V.                                  :  CASE NO. 3:06-CV-1515 (RNC)

SOUTH CENTRAL CONNECTICUT           :
REGIONAL WATER AUTHORITY,           :

        Defendant.                  :

<u>RULING AND ORDER</u>

Plaintiff Charles Coleman, an African-American, brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, <u>et</u> <u>seq</u>. ("Title VII"), and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §46a-60, <u>et</u> <u>seq</u>. ("CFEPA"), against his former employer, the South Central Connecticut Regional Water Authority ("Authority"), which provides water and related services to residential and commercial customers in and around New Haven.  He claims that his employment was terminated because of racial discrimination.  The complaint also includes claims for retaliation in violation of Title VII and CFEPA, plus common law claims for intentional infliction of emotional distress and defamation.  Defendant has moved for summary judgment contending that the evidence demonstrates that plaintiff was fired for poor performance.  After careful consideration, I conclude that the defendant is not entitled to summary judgment on the discrimination claims but is entitled to

summary judgment on the other claims.  Accordingly, the motion for summary judgment is granted in part and denied in part.

I.   Background

Plaintiff was employed by the Authority from 1987 to 2004. In 1998, he joined the Field Service Department.  His job included installing and replacing meters and turning water service on and off.  He received assignments at the beginning of each shift in the form of work orders.  He was expected to drive to the locations listed in the work orders and perform the necessary services.

On August 10, 2004, plaintiff's employment was terminated by the Authority.  The termination was precipitated by a report of an investigation of plaintiff's performance on August 2, 2004, his first day back at work after a five-day suspension, when he failed to successfully complete any of the ten work orders he received.  One of plaintiff's supervisors, James Dadio, conducted the investigation.  After visiting the locations in question, he concluded that plaintiff did not even try to do some of the jobs. Dadio reported his conclusions to the manager of the Field Service Department, Robert Orifice, who in turn discussed them with Mary Pepe, the Authority's vice-president, and David Silverstone, the Authority's president.  After consulting among themselves, these managers decided that plaintiff should be fired.  The termination letter was signed by Orifice.

2

The Authority has a collective bargaining agreement with the United Steelworkers of America ("Union"), which provides that the Authority may terminate employees only for "proper cause."  The agreement also provides for a grievance and arbitration procedure.  The Union grieved the termination of the plaintiff's employment.  An arbitrator heard two days of testimony in December 2004.  In March 2005, the arbitrator issued a written decision finding that the termination was for proper cause.  In essence, the arbitrator credited Dadio's conclusion regarding plaintiff's failure to perform his job on August 2, 2004.  The arbitrator decided that plaintiff, having been warned that his employment was in danger of termination, failed to perform with "any degree of adequacy."

Plaintiff claims that his termination was motivated by racial discrimination, an issue not presented to the arbitrator. He relies heavily on the deposition testimony of another former employee of the Authority, Christine Buono, who worked as an administrative assistant in the Field Service Department for approximately three years before her employment was terminated in mid-November 2004.  At her deposition, Buono testified that Orifice wanted to fire the plaintiff because he was frequently sick.  Orifice and others in supervision treated plaintiff differently than Caucasian employees, according to Buono's testimony, in that they scrutinized his work, yelled at him, disciplined him for failing to complete his work orders,

3

carefully documented any infractions on his part and discussed changing his work records to make it appear that he was not performing his duties.  Buono has also testified that Orifice made racist remarks regarding the plaintiff on a regular basis. According to her testimony, Orifice frequently referred to the plaintiff as "a lazy, black son of a bitch" and frequently called her a "nigger lover" for defending him.  Buono has also testified that all of plaintiff's supervisors, including Dadio and John Cusack, were "involved" in using racist language to refer to the plaintiff.

In addition to Buono's testimony, plaintiff offers his own testimony.  He has testified that he tried to successfully complete work orders he received and was treated more harshly than Caucasian employees who failed to successfully complete their work orders.  According to his testimony, he heard Cusack refer to black people using the term "moly," a derogatory term derived from an Italian word, on two to five occasions.  Cusack also commented to him on the eating habits of another African-American employee, stating "[a]ll you brothers like eating all that garbage, ribs, chicken."  According to plaintiff's testimony, Cusack commented to him about hats worn by the plaintiff and another African-American employee, telling him, "You can't be pimping around with them hats."  Plaintiff objected to this and told Cusack, "You don't have to say all the brother jokes, all the hat jokes."  Plaintiff also heard Orifice refer to

4

another employee as a "nigger" before Orifice became the manager of the Field Service Department.

Plaintiff also offers his annual performance evaluations as evidence that his termination was motivated by discrimination. Orifice, Dadio and Cusack were transferred to the Field Service Department in 2000.  Before they arrived, plaintiff's evaluations were quite good.  For the period September 1997 to 1998, he received three "very good" marks, five "competent" marks, and no marks for "needs improvement." (Pl.'s Mem. Opp'n Summ. J. App. C Ex. 5.)  For the period September 1998 to 1999, he received eight "very good" marks and a comment that "Charlie never gives up on a job and will do his utmost . . . every chance he can."  (Pl.'s Mem. Opp'n Summ. J. App. C Ex. 6.)  His review for 1999 to 2000 consisted of three "very good" marks and five "competent" marks. (Pl.'s Mem. Opp'n Summ. J. App. C Ex. 7.)  After Orifice became the manager of the Department, plaintiff's reviews steadily worsened. For the period 2000 to 2001, he received one "very good," three "competent," and four "needs improvement" marks. (Pl.'s Mem. Opp'n Summ. J. App. C Ex. 8.)  For the period 2001 to 2002, he received four "competent" and four "needs improvement" marks.  (Pl.'s Mem. Opp'n Summ. J. App. C Ex. 9.)  For 2003, he received three "meets requirements" and six "needs improvement" marks.  (Pl.'s Mem. Opp'n Summ. J. App. C Ex. 10.)

II. <u>Discussion</u>

Summary judgment may be granted when "there is no genuine

issue as to any material fact." Fed. R. Civ. P. 56(c).  In
ruling on a motion for summary judgment, a court must decide
"whether the evidence presents a sufficient disagreement to
require submission to a jury or whether it is so one-sided that
one party must prevail as a matter of law." See Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  In making this
determination, the evidence must be viewed in a manner most
favorable to the party against whom summary judgment is sought.
Evidence supporting the nonmoving party's position must be
credited if a reasonable jury could credit it; other evidence
must be disregarded unless a reasonable jury would have to accept
it as true.  If the evidence, viewed this way, is sufficient to
support a verdict for the nonmoving party, summary judgment must
be denied.  See Reeves v. Sanderson Plumbing Prods., Inc., 530
U.S. 133, 150-51 (2000)(discussing identical standard under Fed.
R. Civ. P. 50).

   A.  Discrimination

   Defendant moves for summary judgment on the discrimination
claims contending that a jury would be bound to conclude that
plaintiff's employment was terminated due to poor performance.
The motion is supported by deposition testimony and exhibits as
permitted by Rule 56(c).  Included among the exhibits is the
arbitrator's decision finding proper cause for the termination.
The arbitrator's decision is not dispositive because the
arbitrator was not provided with the evidence that plaintiff

6

offers here in support of his claim of racial discrimination. See Collins v. N.Y. City Transit Auth., 305 F.3d 113, 119 (2d Cir. 2002) (plaintiff can overcome arbitrator's decision by presenting new evidence that shows decision is factually incorrect).[1]

To avoid summary judgment, plaintiff must point to sufficient evidence to permit a jury to find that his termination was motivated at least in part by racial discrimination. See Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111, 114 (2d Cir. 2007).[2] Plaintiff's evidence, viewed fully and most favorably to him, would allow a jury to make this finding. The evidence of racist remarks attributed to Orifice provides support for the inference that the defendant intentionally discriminated because the remarks tend to show that Orifice was motivated by racist attitudes. See Tomassi, 478 F.3d at 116. Orifice was directly involved in the termination decision; he made racist remarks about the plaintiff "all the time," according to Buono; the remarks attributed to him are blatantly racist; and the remarks referred specifically to plaintiff's suitability for employment.

_____

[1] In Collins, the plaintiff was fired only after an arbitration board made an independent inquiry, heard evidence, and authorized the termination based on its finding that the plaintiff had physically assaulted his supervisor. Here, the arbitrator issued his decision approximately nine months after the termination, received no evidence on the issue of discrimination, and made no findings on the issue.

[2] The analysis that applies to claims for wrongful termination is the same under both Title VII and CFEPA.

See id. at 115 ("The more a remark evinces a discriminatory state
of mind, and the closer the remark's relation to the allegedly
discriminatory behavior, the more probative that remark will
be.").

Further support for this finding is provided by the
testimony of Buono and the plaintiff regarding racist remarks by
other supervisory personnel in the Field Service Department;
their testimony that plaintiff was treated more harshly than
other employees; plaintiff's testimony that he performed his
duties to the best of his ability; and the marked decline in the
the performance reviews plaintiff received after Orifice, Dadio
and Cusack transferred to the Field Service Department.

Defendant contends that, even assuming Orifice and
plaintiff's other supervisors made the racist remarks attributed
to them (which they deny), summary judgment is proper because
plaintiff cannot prove that the nondiscriminatory reason given
for his termination is false.  Plaintiff's testimony disputing
the accuracy of Dadio's conclusions regarding what happened on
August 2, 2004 (and disputing as well allegations made by Dadio
and others concerning what happened on prior occasions), viewed
in light of the entire record, is sufficient to raise a jury
issue concerning the validity of the reason given for his
termination.  More fundamentally, plaintiff can prevail on his
discrimination claims by proving that his race played a role in
the termination of his employment even though other factors also

played a part.  See Fields v. N.Y. State Office of Mental
Retardation & Dev., 115 F.3d 116, 121 (2d Cir. 1997) (jury can
conclude that discrimination was a motivating factor, whether or
not the employer's proffered explanation was also in the
employer's mind).[3]

B.  Retaliation

Plaintiff claims that the Authority retaliated against him
for engaging in activity protected by Title VII and CFEPA.  Under
these statutes, plaintiff can recover for retaliation if he
proves that (1) he engaged in a protected activity; (2) his
employer was aware of the activity; (3) he was subjected to an
adverse employment action; and (4) there is a causal connection
between the protected activity and the adverse employment action.
See Gordon v. N.Y. City Bd. of Educ., 232 F.3d 111, 116 (2d Cir.
2000)(discussing elements of Title VII retaliation claim);
Kelley v. Sun Microsystems, Inc., 520 F. Supp. 2d 388, 402 (D.
Conn. 2007)(discussing retaliation claim under CFEPA).

In his complaint, plaintiff alleges that he met with Pepe
and Silverstone and complained that he was being subjected to

---

[3]  In view of Buono's testimony concerning Orifice's alleged
discriminatory animus toward the plaintiff, and Orifice's
important role in the termination process, this case might
qualify as a mixed-motive case under Title VII, that is, a case
in which both lawful and unlawful factors may have affected the
employment decision.  In such a case, the employer has the burden
of proving that the decision would have been the same even in the
absence of the unlawful reason.  See Rose v. N.Y. City Bd. of
Educ., 257 F.3d 156, 160-63 (2d Cir. 2001).

racial discrimination, harassment, and retaliation by Orifice and
the supervisors in the Field Service Department. (Compl. ¶ 59.)
The complaint further alleges that at a diversity conference
hosted by the Authority in February 2004, he informed presenters
and attendees that, in his opinion, minority workers at the
Authority were not treated fairly or with respect.  (Compl. ¶
66.)

     To obtain summary judgment on this claim, defendant must
point to an absence of evidence to permit a jury to find in favor
of the plaintiff.  In its memorandum, defendant states that it
accepts for present purposes that plaintiff engaged in protected
activity.  It then states that there is no basis for finding a
causal connection between any such activity and an adverse
employment action.  In his response, plaintiff does not point to
any evidence that he engaged in activity protected by Title VII,
nor any evidence linking such activity to his termination (or any
other adverse employment action).  Because he has failed to make
this showing, summary judgment is granted on this claim in
accordance with Rule 56(c).

     C. Intentional Infliction of Emotional Distress

     To prevail on his claim for intentional infliction of
emotional distress, plaintiff must prove that (1) the defendant
intended to inflict emotional distress or knew or should have
known emotional distress was a likely result of its conduct; (2)
the conduct was extreme and outrageous; (3) the conduct caused

plaintiff to suffer emotional distress; and (4) his emotional distress was severe.  See Petyan v. Ellis, 200 Conn. 243, 253 (1986).  Defendant seeks summary judgment on this claim contending that plaintiff cannot carry his burden of proof on the second element.  Plaintiff responds that racial slurs in the workplace can constitute extreme and outrageous conduct under Connecticut law.

A supervisor's discriminatory comments directed to an employee based on the employee's race, religion, or ethnicity will provide a cause of action for intentional infliction of emotional distress if they exceed all bounds of decency.  See Savage v. Andoh, No. CV075015657, 2008 WL 1914630, *3-5 (Conn. Super. Ct. Apr. 11, 2008)(discussing cases).  In this case, the most egregious comments concerning the plaintiff were uttered outside his presence and there is no evidence he was aware of them.  Based on the evidence provided by the parties, it appears that the only comments any supervisor made to him directly concerning his race were the comments by Cusack discussed above. These comments were offensive and the plaintiff rightly objected to them.  Viewed in the context of the reported decisions dealing with a supervisor's discriminatory comments to an employee, however, I do not think a jury could reasonably find that the comments were so outrageous in character and extreme in degree as to go beyond all bounds of decency.  Accordingly, defendant is entitled to summary judgment on this claim.

D. Defamation

Plaintiff claims that during the course of his employment, defendant's agents published false statements concerning his job performance to co-workers and managers.  To prevail on this claim, he must prove that: (1) a false defamatory statement was published concerning his conduct; (2) the statement identified him to a third person; (3) the statement was published to a third person; and (4) his reputation was injured.  Cweklinsky v. Mobil Chem. Co., 267 Conn. 210, 217 (2004).  A defamatory statement is a communication that tends to harm one's reputation, lowering him in the estimation of the community or deterring others from associating with him.  See Gagnon v. Housatonic Valley Tourism Dist. Comm'n, 92 Conn. App. 835, 847 (2006).  In general, "statements concerning work performance are merely expressions of opinion and, therefore, are not actionable as defamation."  Grossman v. Computer Curriculum Corp., 131 F. Supp. 2d 299, 312 (D. Conn. 2000).

Defendant contends that it is entitled to summary judgment on this claim because plaintiff cannot prove that its agents published a false statement of fact concerning his conduct, as opposed to an expression of opinion.  "A statement can be defined as factual if it relates to an event or state of affairs that existed in the past or present and is capable of being known."  Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107, 111 (1982).  An opinion, in contrast, "is a personal *comment*

12

about another's conduct, qualifications or character that has some basis in fact." Id. "'The important point is whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact.'" Id. at 112 (quoting 1 Harper & James, Torts §5.28, p. 458).

To avoid summary judgment on this claim, plaintiff must point to a false statement made by one of the defendant's agents and demonstrate that the statement can support a verdict in his favor. Plaintiff's response to the defendant's motion is insufficient to sustain this burden. His response consists of the following: "Plaintiff simply states that if a reasonable jury could find that [his] work records and/or evaluations were altered or were untrue, as is argued [in plaintiff's response to the defendant's motion on the discrimination claims], then a reasonable jury could also conclude that such statements were sufficient to constitute defamation." Pl.'s Mem. Opp'n Summ. J. at 17. This is insufficient because the argument plaintiff refers to (i.e. his argument in opposition to summary judgment on the discrimination claims) does not attempt to show that one or more statements in his "work records and/or evaluations" could reasonably be construed as a false statement of fact, rather than a protected expression of opinion.

It is arguable that statements made by Cusack and Orifice in letters to the plaintiff dated February 6, 2004, and August 10, 2004, respectively, could be characterized as assertions of fact, rather than protected opinion, specifically, Cusack's statement, "Upon further investigation it was found that you did not attempt to do the other 5 [jobs]." (Pl.'s Mem. Opp'n Summ. J. App. A Ex. 14.); and Orifice's statement, "Upon an actual visit to each of the jobs and a review of the time spent on each, it was apparent that you had not even attempted to address the problems." (Pl.'s Mem. Opp'n Summ. J. App. A Ex. 20.).  It is far from clear, however, that either of these statements can support a defamation claim in the context of this case.  Since plaintiff has failed to make a particularized showing that a reasonable jury could return a verdict in his favor based on these (or any other) statements, the defendant is entitled to summary judgment on the defamation claim.

IV.  <u>Conclusion</u>

For the foregoing reasons, defendant's motion for summary judgment is hereby granted in part and denied in part.  The claims for retaliation, intentional infliction of emotional distress and defamation are dismissed.

So ordered this 12th day of February 2009.

_____
/s/ RNC
Robert N. Chatigny
United States District Judge

14